946 F.2d 1565
 292 U.S.App.D.C. 85
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
Joseph H. LACEY, Petitioner,
v.
RALEY'S EMERGENCY ROAD SERVICE, Insurance Co. of North
America, and Director, Office of Workers'
Compensation Programs, U.S. Department
of Labor, Respondents.
RALEY'S EMERGENCY ROAD SERVICE and Insurance Co. of North
America, Petitioners,
v.
DIRECTOR, OFFICE OF WORKER'S COMPENSATION PROGRAMS, U.S.
DEPARTMENT OF LABOR, and Joseph H. Lacey, Respondents.
 Nos. 90-1491, 90-1502.
 United States Court of Appeals, District of Columbia Circuit.
 May 7, 1991.
 
 On Petition for Review of an Order of the Benefits Review Board.
 Before MIKVA, Chief Judge, and WALD and SILBERMAN, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 These cases were considered on the record on petitions for review of an order of the Benefits Review Board, and on the briefs filed by the parties and argument by counsel. The court has determined that the issues presented occasion no need for a published opinion. See D.C.Cir.Rule 14(c). For the reasons stated in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED that the petitions for review are denied.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petitions for rehearing. See D.C.Cir.Rule 15(b)(2).
 
 MEMORANDUM
 
 4
 In these consolidated cases, the parties petition for review of various aspects of a Benefits Review Board (the "Board") decision awarding the claimant permanent partial disability benefits and denying the employer relief from liability. We uphold the Board's decision and deny the petitions for review.
 
 I.
 
 5
 Joseph Lacey suffered a work-related injury in Maryland in 1979 while employed as a tow truck operator for Raley's Emergency Road Service ("Raley's" or "the employer"), a company conducting operations throughout the metropolitan Washington, D.C. area. Subsequent psychological evaluations revealed that Mr. Lacey was also learning disabled and mentally retarded. Mr. Lacey sought disability benefits under the District of Columbia Workers' Compensation Act of 1928, which, as in force at the time of his injury, extended the provisions of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901 et seq. (1988), to injuries arising out of employment in the District. See D.C.Code § 36-501 et seq. (1973) (the "1928 Act"), superseded by D.C.Code § 36-301 et seq. (1988).
 
 
 6
 As relevant here, the administrative law judge ("ALJ") first found that the 1928 Act governed Mr. Lacey's claim, even though his injury did not occur in the District. See Joseph H. Lacey v. Raley's Emergency Road Serv., No. 86-DCW-85, at 5-8 (ALJ May 11, 1988) [hereinafter ALJ Op.]. Second, the ALJ concluded that the employer had presented sufficient evidence of actual alternative employment opportunities to warrant categorizing Mr. Lacey as permanently partially disabled, not permanently totally disabled. See ALJ Op. at 17-19. The Benefits Review Board affirmed both of these rulings. See Lacey v. Raley's Emergency Road Serv., Nos. 88-1812, 88-1812A, and 88-1812B, at 2-5 (BRB Aug. 30, 1990) [hereinafter Board Op.].
 
 
 7
 Finally, the ALJ concluded that the employer qualified for relief under section 8(f) of the Longshore Act, which shifts partial liability for compensation payments onto a special fund in cases where the employee's disability is not due solely to the claimed injury. See 33 U.S.C. § 908(f); ALJ Op. at 19-21. The Board reversed the ALJ's award of section 8(f) relief, finding that Mr. Lacey's mental retardation and learning disability had not been "manifest" to the employer prior to his work-related injury. Board Op. at 5-6.
 
 II.
 A. Applicability of 1928 Act
 
 8
 As an initial matter, we reject the employer's challenge to the Board's finding that Mr. Lacey's injury is compensable under the 1928 Act. The ALJ and the Board both found that Raley's carried on employment within the District, a prerequisite to coverage under the statute. See ALJ Op. at 5; Board Op. at 2; D.C.Code § 36-501 (applying Longshore Act to "the injury or death of an employee of an employer carrying on any employment in the District of Columbia, irrespective of the place where the injury or death occurs"). The ALJ and the Board also concluded, based on our decision in Director, Office of Workers' Compensation Programs v. National Van Lines, Inc., 613 F.2d 972 (D.C.Cir.1979), cert. denied, 448 U.S. 907 (1980), that sufficient connections existed between the District, the employee, and the employer to support application of the 1928 Act to this claim. See ALJ Op. at 6-7; Board Op. at 3; Cardillo v. Liberty Mut. Ins. Co., 330 U.S. 469, 476 (1947).
 
 
 9
 We agree that National Van Lines is controlling. There, we stated that the 1928 Act is "of widest permissible extraterritorial application," and found, on facts similar to those here, that the interstate nature of an employer's business and employment-related activities in the Washington, D.C. metropolitan area constituted a substantial connection with the District, even though the employee did not reside in, and his injury occurred outside of, the District. See National Van Lines, 613 F.2d at 979-83. We have recently reaffirmed National Van Lines' broad interpretation of the 1928 Act's coverage, see, e.g., Edgerton v. WMATA, 925 F.2d 422, 424-26 (D.C.Cir.1991) (per curiam); Greenfield v. Volpe Construction Co., 849 F.2d 635, 637-38 (D.C.Cir.1988) (per curiam), and find no reason to disavow it now.
 
 B. Availability of Alternative Employment
 
 10
 Mr. Lacey challenges the Board's affirmance of the ALJ's finding that alternative employment opportunities were available to him, thereby rendering Mr. Lacey only permanently partially, not permanently totally, disabled. A claimant establishes a prima facie case of total disability by demonstrating that he is unable to return to his former employment; the burden then shifts to the employer to establish "suitable alternate employment opportunities available to claimant considering his age, education and work experience." See Crum v. General Adjustment Bureau, 738 F.2d 474, 479 (D.C.Cir.1984); New Orleans (Gulfwide) Stevedores v. Turner, 661 F.2d 1031, 1042-43 (5th Cir.1981) (requiring employer to demonstrate that "there exists a reasonable likelihood, given the claimant's age, education, and vocational background that he would be hired if he diligently sought the job"). The ALJ's finding that Mr. Lacey cannot return to work as a tow truck operator is not contested here. See ALJ Op. at 13-14; Board Op. at 4. Thus, the only question is whether the employer met its burden of demonstrating that alternative employment was available.
 
 
 11
 The ALJ found that the employer had carried this burden. The ALJ relied principally on a post-hearing letter submitted by the employer's vocational expert witness explaining that the managers of two local McDonald's restaurants, after learning of Mr. Lacey's background, physical restrictions, and functional illiteracy, had expressed willingness to interview him for possible janitorial employment. See ALJ Op. at 18. Mr. Lacey never appeared at the interview the employer's witness scheduled for him, nor did he submit any evidence to the ALJ explaining his failure to appear. On these facts, the ALJ concluded that the employer had satisfied its burden of showing that actual employment opportunities existed, see ALJ Op. at 18, and the Board affirmed. See Board Op. at 4-5.
 
 
 12
 Like the Board, we must treat the ALJ's findings of fact as conclusive "if supported by substantial evidence on the record as a whole." See Crum, 738 F.2d at 477, citing 33 U.S.C. § 921(b)(3). See also NLRB v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300 (1939) (substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). We agree with the Board that the letter from the vocational expert afforded sufficient evidence from which the ALJ could reasonably conclude that alternative employment opportunities existed, particularly where Mr. Lacey made no attempt to rebut that inference by, for example, attending the scheduled interview.
 
 C. Denial of Section 8(f) Relief
 
 13
 The employer challenges the Board's refusal to award it relief under section 8(f) of the Longshore Act, which limits an employer's liability in cases where an employee's pre-existing permanent partial disability exacerbates the consequences of his work-related injury. See 33 U.S.C. § 908(f). An employer may qualify for section 8(f) relief only if: (1) the employee had a pre-existing permanent partial disability; (2) the pre-existing disability contributed to the permanent disability caused by the injury giving rise to the employee's claim; and (3) the pre-existing disability was manifest to the employer. See Director, Office of Workers' Compensation Programs v. Belcher Erectors, 770 F.2d 1220, 1222 (D.C.Cir.1985). The parties agree that Mr. Lacey's mental retardation and learning disability constitute pre-existing disabilities that combined with his work-related injury to create a greater degree of permanent disability. Only the third requirement--that Mr. Lacey's mental retardation and learning disability have been manifest to the employer at the time of Mr. Lacey's injury--is at issue here.
 
 
 14
 An employer can satisfy the "manifest" requirement by demonstrating actual awareness of the prior disabilities or by proving the existence of medical records pre-dating the work-related injury that disclose the earlier disabilities. See Director, Office of Workers' Compensation Programs v. Brandt Airflex Corp., 645 F.2d 1053, 1059-61 (D.C.Cir.1981); Board Op. at 6. The employer has argued only actual, not constructive, awareness of Mr. Lacey's disabilities.
 
 
 15
 The ALJ found that the employer had been aware of Mr. Lacey's illiteracy prior to his work-related injury, but stated that the employer "may not have realized, prior to the injury, that [Mr. Lacey's] illiteracy was due to mental retardation and a learning disability." ALJ Op. at 21. Nonetheless, the ALJ concluded that the employer's awareness of Mr. Lacey's illiteracy rendered his disabilities manifest. See id. The Board disagreed with the ALJ's legal conclusion, holding that the employer's awareness of Mr. Lacey's illiteracy "does not establish that employer was aware of claimant's mental retardation or his learning disability." Board Op. at 6.
 
 
 16
 Because, as the Board noted, see Board Op. at 6, there is no evidence in the record to suggest that the employer was aware of Mr. Lacey's mental retardation and learning disability, and because the ALJ made no such finding,* the only question is whether the Board properly concluded that the employer's awareness of Mr. Lacey's illiteracy was insufficient to render his underlying mental disabilities manifest for the purposes of section 8(f). Given that the Board's holding comports with the position of the Office of Workers' Compensation Programs, the policymaking arm of the Department of Labor in workers' compensation matters, see Greenfield, 849 F.2d at 638; the decisions of other circuits to have reached the question, see infra; and suggestions from our own precedents, see American Mutual Insurance Co. of Boston v. Jones, 426 F.2d 1263, 1268 (D.C.Cir.1970) (mental retardation is not manifest absent a "sufficient degree of social maladaption"), we cannot say that the Board erred in so concluding. See, e.g., Todd Shipyards Corp. v. Director, Office of Workers' Compensation Programs, No. 87-4624 (5th Cir. March 23, 1988) (unpublished opinion) (rejecting employer's argument that employee's obvious speech impairment--which could have been attributable to any number of disorders--rendered his underlying neurological malformation manifest); State Compensation Ins. Fund v. Director, Office of Workers' Compensation Programs, 818 F.2d 1424, 1426 (9th Cir.1987) (noting that "[p]roof of illiteracy, by itself, does not establish a preexisting permanent partial disability," and requiring employer to show that illiteracy was "due to something else, such as mental retardation or a learning disability").
 
 III.
 
 17
 For the foregoing reasons, we deny the petitions for review and affirm the Board's decision as to the scope of the 1928 Act, the availability of alternative employment, and the denial of section 8(f) relief.
 
 
 18
 It is so ordered.
 
 
 
 *
 Judge Wald believes that there is evidence in the transcript of the employer's testimony to support a finding that the employer was aware of the mental disability that underlay Mr. Lacey's illiteracy. See Joint Appendix at 144. In her view, the ALJ appeared to find that the employer was so aware, see ALJ Op. at 20, even though he ultimately resolved the section 8(f) issue solely on the basis of Mr. Lacey's illiteracy. See id. at 21. Accordingly, Judge Wald would remand this case to the ALJ for a redetermination of whether the underlying mental disability was "manifest" to the employer at the time of the work-related injury and whether, therefore, the requirements of section 8(f) had been met