134 F.3d 377
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
HALL-BUCK MARINE, INC., Petitioner,
v.
Dawn DESBRISAY and Director, Office of Workers' Compensation
Programs, Respondents.
 No. 96-70967.
 United States Court of Appeals, Ninth Circuit.
 Argued and submitted Nov. 6, 1997.
Decided Jan. 14, 1998.
 
 1
 Appeal from the Decision and Order of the Benefits Review Board, No. 95-1277; United States Department of Labor.
 
 
 2
 Before: NOONAN and HAWKINS, Circuit Judges, and MERHIGE,** District Judge.
 
 
 3
 MEMORANDUM*
 
 
 4
 Hall-Buck Marine, Inc. ("Hall-Buck") appeals an order of the Benefits Review Board (the "Board") awarding Claimant Dawn DesBrisay disability benefits under the Longshore and Harbor Workers Compensation Act ("LHWCA"), 33 U.S.C. § 908(c)(21) as a result of a thoracolumbar strain DesBrisay suffered while working for Hall-Buck. Hall-Buck contended before the Administrative Law Judge ("ALJ") that DesBrisay had experienced no decline in earning capacity and no compensable permanent disability. The ALJ determined that Claimant's post-injury earnings were not representative of her wage-earning capacity and found that her wage-earning capacity had been reduced by two-sevenths of her pre-injury weekly salary. The ALJ thus awarded Claimant benefits for permanent disability at the weekly rate of $191.90.
 
 
 5
 Decisions of the Labor Benefits Review Board are reviewed for errors of law and adherence to the substantial evidence standard. See Sproull v. Director, OWCP, 96 F.3d 895, 898 (9th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 1333 (1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Goldsmith v. Director, OWCP, 838 F.2d 1079, 1081 (9th Cir.1988) (citation omitted), In reviewing findings of fact for substantial evidence, the panel may not substitute its views for the ALJ's views or engage in de novo review of the evidence. Container Stevedoring Co. v. Director. OWCP, 935 F.2d 1544, 1546 (9th Cir.1991).
 
 I.
 
 6
 Hall-Buck contends that the ALJ failed to impose upon Claimant DesBrisay the burden of proving that her post-injury earnings were not representative of her post-injury earning capacity. Hall-Buck did not raise this argument before the Benefits Review Board In its appeal to the Board, Hall-Buck argued that the ALJ's determination that DesBrisay's earnings did not fairly represent her wage earning capacity was not supported by substantial evidence and that the ALJ incorrectly applied the law of lost earning capacity. Hall-Buck argues for the first time before this Court that the ALJ's failure to explicitly state Claimant's burden of proof on the issue of whether the Claimant's post-injury wages are representative makes the ALJ's decision unreviewable by this Court. See 5 U.S.C. § 557; Atchison, Topeka and Santa Fe Ry. Co. v. Wichita Bd. of Trade, 412 U.S. 800, 807 (1973).
 
 
 7
 Hall-Buck has failed to exhaust its administrative remedies by not making its unreviewability argument to the Board. Hall-Buck has therefore waived the right to challenge the sufficiency of the ALJ's reasoning in this Court because it has not offered "exceptional circumstances" excusing its failure to present the argument to the Board:
 
 
 8
 A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented. Thus in the absence of exceptional circumstances, a reviewing court will refuse to consider contentions not presented before the administrative proceeding at the appropriate time.
 
 
 9
 Duncanson-Harrelson Co. v. Director, OWCP, 644 F.2d 827, 832 (9th Cir.1981) (citations omitted). Because Hall-Buck has failed to preserve its unreviewability argument, the Court declines to review it.
 
 II
 
 10
 Petitioner also argues that the ALJ's determination that Claimant DesBrisay's earnings did not accurately reflect her ability to earn as injured was not supported by substantial evidence The record shows that at the time of the administrative hearing, DesBrisay was earning as much, if not more, than she did before she was injured. As the ALJ correctly noted, all of the doctors who have examined DesBrisay, including the doctor who examined her at the request of her employer, feel that she will be unable to sustain the demanding physical exertion required to be a longshore worker. The record also reveals that DesBrisay is currently working with a great deal of pain and discomfort and requires extra assistance from her fellow employees to enable her to perform her job functions. In addition, the record is clear that DesBrisay has lost the ability to control the timing of her work as discussed below. All of these factors suggest some loss in wage-earning capacity.
 
 
 11
 Actual post-injury wages are only used to determine loss of earning capacity if they "fairly and reasonably represent" the claimant's wage-earning capacity. 33 U.S.C. § 908(h). The ALJ may find that Claimant has suffered a loss of wage-earning capacity even if Claimant's post-injury earnings are higher than her pre-injury earnings. See Container, 935 F.2d at 1549 (holding that higher wages did not represent wage-earning capacity)
 
 
 12
 The Benefits Review Board has set out a non-exclusive list of the factors that an ALJ should consider in determining whether a claimant's post-injury wages fairly and reasonably reflect her wage-earning capacity: claimant's physical condition, age, education, industrial history, and availability of employment that she can perform after the injury. See Abbott v. Louisiana Ins. Guar. Ass'n, 27 BRBS 192, 204 (1993). Other relevant factors include the claimant's earning power on the open market, whether the claimant must spend more time or use more effort to achieve pre-injury production, and whether medical or other circumstances indicate a probable future wage loss due to the injury. See 33 U.S.C. § 908(h): Container, 935 F.2d at 1550.
 
 
 13
 We find that the ALJ's determination that Claimant DesBrisay's earnings do not accurately reflect her ability to earn as injured is supported by substantial evidence.
 
 III.
 
 14
 After finding that Claimant's post-injury earnings were not representative of her earning capacity, the ALJ was required to,
 
 
 15
 [i]n the interest of justice, fix such wage-earning capacity as shall be reasonable, having due regard to the nature of his injury, the degree of physical impairment, his usual employment, and any other factors or circumstances in the case which may affect his capacity to earn wages in his disabled condition, including the effect of disability as it may naturally extend into the future.
 
 33 J.S.C. § 908(h)
 
 16
 The ALJ set DesBrisay's alternative post-earning capacity at five-sevenths of her pre-injury wages based on the ALJ's finding that the Claimant had to make herself available an additional two days a week to maintain her pre-injury earnings. The ALJ misunderstood the facts regarding DesBrisay's pre- and post-injury availability and hours of work. DesBrisay explained at the administrative hearing that longshore workers get job assignments by going to "the hall" each day to find out what assignments are available, at which point the employees have the option of either accepting or refusing any particular assignment. Prior to her injury, DesBrisay went to the hiring hall seven days a week and chose to work approximately five days a week. After the injury, DesBrisay continues to go to the hiring hall seven days a week and works approximately five days of the week. Her availability and hours are the same as before the injury, as are her earnings. The only difference is that DesBrisay no longer has the luxury of choosing to refuse a job assignment, either because it is an unappealing assignment or because she preferred to relax. Since the injury, DesBrisay has been obliged to accept every assignment that she is physically capable of performing in order to maintain a similar income level.
 
 
 17
 DesBrisay's inability to control the timing of her work does indicate some loss in wage-earning capacity. However, the ALJ misunderstood DesBrisay's testimony and thought that she had to present herself at the hall two extra days each week after the injury. As discussed above, that interpretation of her testimony is no: supported by substantial evidence, and the ALJ's reliance on the increased availability factor led him to overstate DesBrisay's post-injury loss of earning capacity. The other factors cited by the ALJ in determining DesBrisay's post-injury earning capacity, such as the necessity of assistance from co-workers, the pain with which DesBrisay works, and the likelihood that she will be unable to sustain her longshore work, are also insufficient to support the amount by which the ALJ reduced her post-injury wage-earning capacity.
 
 
 18
 The Supreme Court's recent decision in Metropolitan Stevedore Co. v. Rambo, --- U.S. ----, 117 S.Ct. 1953 (1997), makes clear that the possibility of future wage loss due to the unlikelihood that an individual will be able to sustain his or her current work does not justify finding a reduction in present earning capacity. In Rambo, the Court adopted a "wait-and-see approach" to determining diminished wage earning capacity. Id. at 1961-62. When an injury does riot lead to a present reduction in earnings but there is a sufficient chance of future wage loss, the proper approach is to make a nominal award that preserves the opportunity for future upward adjustments. Id. The ALJ should not to try to incorporate potential future losses into the current capacity determination. Id.
 
 
 19
 Under this approach, the ALJ should make a nominal award because DesBrisay requires additional assistance from fellow employees to adequately perform her duties, she will probably be unable to sustain her longshore work, and thus she will have to seek less remunerative types of employment in the future. These factors do not provide a legitimate basis for finding a current reduction in DesBrisay's wage earning capacity. The remaining factor cited by the ALJ in support of his finding that DesBrisay's post-injury wages do not accurately reflect her wage earning capacity is that she works with a significant amount of pain and, thus, requires additional effort to maintain her pre-injury income. The experience of pain when working is clearly relevant to the determination of whether an individual's post-injury wages fairly represent the individual's wage earning capacity, Container, 935 F.2d at 1550-51, and there is substantial evidence in the record to support DesBrisay's claim that she experiences significant pain while performing longshore work. It is unclear, however, that DesBrisay's pain supports the signiflcant reduction Ln earnings capacity found by the ALJ. The two-sevenths figure used by the ALJ seems particularly high in view of the fact that medical reports in the record measure DesBrisay's impairment at between five and ten percent.
 
 
 20
 Thus, the ALJ's determination that DesBrisay suffered a two-sevenths reduction in her earnings capacity is neither "reasonable" as required by statute nor supported by substantial evidence. We remand to the Board to recalculate DesBrisay's award in a manner consistent with this opinion and the recent Supreme Court decision in Rambo discussed herein.
 
 IV
 
 21
 Based on the foregoing, we affirm the Benefits Review Board in part, and remand for a recalculation of Claimant DesBrisay's award consistent with this opinion.
 
 
 22
 AFFIRMED IN PART, REVERSED AND REMANDED IN PART. Each party to bear its own costs. Claimants' attorney's fees request is deferred pending the proceedings on remand.
 
 
 
 **
 Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3